Jeannette HAUSLER, Petitioner,

v.

BNP PARIBAS S.A., Respondent.

15 Civ. 8377(VM)

United States District Court,
S.D. New York.

Signed March 11, 2016

Lindsey Lazopoulos Friedman, Roberto Martinez, Stephanie Anne Casey, Curtis B. Miner, Colson, Hicks & Eidson, Coral Gables, FL, for Petitioner.

Carmine D. Boccuzzi, Jr., Cleary Gottlieb, New York, NY, for Respondent.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Petitioner Jeannette Hausler ("Hausler") brought this action as the successor and personal representative of the Estate of Robert Otis Fuller ("Fuller") seeking a finding of contempt and an award of sanctions against respondent BNP Paribas S.A. ("BNP Paribas" or "BNPP"), a financial institution headquartered in Paris with a United States branch located in New York ("BNPP New York"). Hausler's petition ("Petition", Dkt. No. 1) alleges contempt based on BNP Paribas's purportedly misleading responses to two writs of execution (the "Writs") levied on BNPP New York to enforce Hausler's judgment against the Republic of Cuba ("Cuba"). BNP Paribas filed the instant motion to dismiss Hausler's Petition ("Motion", Dkt. No. 12) on the basis that the Petition is procedurally improper and raises no issue of substantive merit.

Hausler opposed the Motion (Dkt. No. 21) and BNP Paribas replied (Dkt. No. 23). Upon consideration of the parties' submissions, the Court grants BNP Paribas's Motion and denies Hausler's Petition in its entirety.

## I. BACKGROUND [1]

Petitioner Hausler seeks to execute on a 2007 default judgment of $100,000,000 in

---

1. The factual summary below is derived primarily from the following exhibits and any exhibits attached thereto: Notice of Petition for Finding of Contempt Including an Award of Sanctions Against BNP Paribas S.A. ("Petition"), dated October 23, 2015 (Dkt. No. 1); Notice of Motion to Dismiss the Petition for Finding of Contempt and Memorandum of Law in Support ("Motion"), dated December 15, 2015 (Dkt. Nos. 12 and 13); Memorandum of Law in Opposition to Motion to Dismiss Petition for Order of Contempt and Sanctions, dated January 28, 2016 (Dkt. No. 21); and Reply Memorandum of Law of BNP Paribas in Support of Motion to Dismiss the Petition for Finding of Contempt, dated February 12,

compensatory damages and $300,000,000 in punitive damages entered in Florida state court against Cuba, Fidel and Raul Castro, and the Cuban Revolutionary Armed Services (collectively, the "Judgment Debtors") for the extrajudicial torture and killing of Fuller, Hausler's brother. Hausler's judgments were given full faith and credit pursuant to 28 U.S.C. Section 1728 by the United States District Court for the Southern District of Florida in 2008 and subsequently registered in the Southern District of New York. As part of her efforts to execute on the judgment, Hausler commenced enforcement proceedings against several banks in this District[2] and later asked the Court to issue writs of execution (also referred to herein as levies) on BNP Paribas pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Section 5232(a) ("Section 5232(a)") for $99,000,000, the unsatisfied portion of the compensatory damages award. The Court issued two such writs: one on September 28, 2010 (the "2010 Writ") and one on January 4, 2011 (the "2011 Writ"). The United States Marshal levied both Writs on BNP Paribas.

In response to each of the Writs, the Director of BNP Paribas's legal department wrote to the U.S. Marshal as follows:

This letter responds to the Writ of Execution that you sent to BNP Paribas in connection with the abovereferenced

matter on [date]. As you may be aware, U.S. federal regulations prohibit financial institutions such as BNP Paribas from engaging in transactions involving Cuban funds. Consequently, we write to advise you that BNP Paribas would not be able to remit to the U.S. Marshals any funds that it may be holding, if any, that are covered by the Writ of Execution. (Dkt. No. 1, Exs. 5, 7.)

Upon receiving the above responses to the Writs, Hausler did not commence a turnover petition under N.Y. C.P.L.R. 5225(b) ("Section 5225(b)"), or undertake discovery or other proceedings against BNPP until the instant Petition.

On June 30, 2014, BNP Paribas reached a plea agreement (the "June 2014 Agreement") with the United States Department of Justice ("DOJ") under which BNP Paribas admitted to conspiring with banks and other entities in countries subject to United States sanctions, including Cuba, to move billions of dollars through the United States financial system in violation of sanctions laws between 2002 and 2012.[3] BNP Paribas pled guilty to one count of conspiracy to commit an offense against the United States under 18 U.S.C. Section 371 by conspiring to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. Section 1701 et seq., and the Trading with the Enemy Act

---

2016. (Dkt. No. 23.) Except where specifically referenced, no further citation to these sources will be made.

**2.** The enforcement proceedings were consolidated before this Court as *Hausler, et al. v. JPMorgan Chase Bank, N.A., et al.*, 09 Civ. 10289 (S.D.N.Y. Apr. 20, 2010). BNPP is not a respondent in those proceedings.

**3.** BNP Paribas also reached agreements in 2014 with the District Attorney for the County of New York to plead guilty to one count of Falsifying Business Records in the First De-

gree, N.Y. Penal Law Section 175.10, and one count of Conspiracy in the Fifth Degree, N.Y. Penal Law Section 105.05(1); with the Office of Foreign Assets Control of the United States Department of the Treasury ("OFAC") to enter a Settlement Agreement and financial penalty; with the Board of Governors of the Federal Reserve System to a Cease and Desist Order and Order of Assessment of a Civil Money Penalty; and with the New York State Department of Financial Services ("DFS") to entry of a Consent Order under New York Banking Law Section 44.

("TWEA"), 50 U.S.C. App'x, Section 1 *et seq.*

According to the Statement of Facts in the June 2014 Agreement ("Statement of Facts"), BNP Paribas concealed from scrutiny more than $1,747 billion in financial transactions on behalf of Cuban entities by scrubbing, or by asking transmitting banks to omit, information identifying Cuba from wire transfer messages. Ninety-six percent of those transactions were illegally moved through BNPP New York. Erasing information about Cuban entities prevented the transactions from being blocked while passing through United States banks—a necessary step to clear the transactions in dollars for Cuban credit facilities. The Statement of Facts emphasizes that, following a widely circulated internal legal opinion in 2004, BNPP and its employees were "on clear notice that U.S. sanctions did, in fact, apply to all U.S. dollar transactions involving [Cuban entities] cleared in the United States." (Dkt. No. 1, Ex. 10 at ¶ 60.) As part of the June 2014 Agreement, BNP Paribas agreed to forfeit $8,833,600,000, the total proceeds of BNP Paribas's violations. BNPP agreed that it would not "authorize or approve . . . any statement, in litigation or otherwise, through the Stipulated Probation Term [4] (i) contradicting the guilt of BNPP, [or] (ii) contradicting the facts set forth in the Statement of Facts . . . ." (Dkt. No. 1, Ex. 8 at 8.)

Hausler argues that, given BNP Paribas' admissions regarding its transactions with Cuban entities in the Statement of Facts, the June 2014 Agreement, and other agreements, BNP Paribas's written responses to the 2010 and 2011 Writs were "intentionally misleading" and obstructed the attachment and execution of the Cuban funds sought in the Writs (*see* Dkt. No. 1 at ¶¶ 25, 29.) Hausler argues that BNP Paribas's failure to identify any illegal transactions involving Cuban funds at the time the Writs were issued, thereby obstructing Hausler's collection of her default judgment, constitutes contempt under 18 U.S.C. Section 401 ("Section 401") and the Court's inherent contempt powers. Hausler asks the Court to find BNP Paribas in contempt of court and impose sanctions on BNPP for willfully providing misleading responses to the Writs. Further, Hausler asks the Court to award sanctions to Hausler in the amount of her outstanding judgment in addition to fees and costs of the proceeding.

## II. DISCUSSION

■■■ United States courts are authorized to punish "disobedience or resistance to [their] lawful writ, process, order, rule, decree or command" by fine, imprisonment, or both. 18 U.S.C. § 401(3). Courts also maintain the inherent power to enforce their orders by civil contempt. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir.2004) (*citing King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995)).

BNP Paribas moves to dismiss Hausler's Petition on several grounds. As a threshold matter, BNPP argues that the petition is procedurally incorrect because it was not brought before the Court by way of a motion. Further, BNPP argues

---

**4.** The Stipulated Probation Term runs from May 1, 2015 to May 1, 2020.

that the 2010 and 2011 Writs, without an additional turnover judgment, cannot serve as a basis for a contempt finding. Finally, BNPP contends that Hausler fails to show by clear and convincing evidence that BNPP acted in contempt by responding to the levies in the manner it did. The Court will address each of BNPP's arguments in turn.

### A. *PROCEDURAL STANCE OF HAUSLER'S PETITION*

Hausler brings her request for a contempt finding before the Court in the form of a petition. (*See* Dkt. No. 1 at 1.) BNP Paribas objects that Rule 83.6 of the Local Rules of the United States District Court for the Southern District of New York ("Rule 83.6") requires a proceeding for civil contempt to be "commenced by the service of a notice of motion or order to show cause," Rule 83.6(a), and established by clear and convincing evidence. *See Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir.2009) (*citing King*, 65 F.3d at 1058).

██ The Court notes that the Petition was first filed as a miscellaneous proceeding because there existed no underlying civil action at the time, but the Part One court ordered Hausler to file the case under a civil docket number. (*See* Dkt. No. 21, Ex. A.) Because Hausler was instructed by the Part One court to · submit her claim as a plenary action, the Court will not dismiss the Petition for failure to comply with Rule 83.6. For purposes of deciding the merits of Hausler's contempt action, the Court will consider the Petition a motion for civil contempt properly filed.

### B. *CONTEMPT AS A REMEDY FOR A WRIT OF EXECUTION*

██ BNP Paribas contends that even if the Petition were properly filed as a motion, it must be denied because contempt is not available as a remedy for violation of a writ of execution issued under New York state law. Hausler never commenced a turnover proceeding or other civil action seeking to enforce the levy, BNPP argues, so there existed no enforceable court order subject to contempt under New York law. Hausler objects that the 2010 and 2011 Writs were lawful court orders, the failure to respond to which warrants a remedy of contempt.

██ Post-judgment enforcement procedures in federal proceedings are governed by New York state law pursuant to Rule 69(a) of the Federal Rules of Civil Procedure ("Rule 69(a)"), which provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution ... must accord with the procedure of the state where the court is located...." Fed. R. Civ. P. 69(a)(1). The purpose of the first sentence of Rule 69(a) is to "restrict remedies on money judgments to legal process" and to avoid the use of the contempt power or other methods beyond those prescribed by state law "except in cases where established principles so warrant." *Hilao v. Estate of Marcos*, 95 F.3d 848, 854–55 (9th Cir.1996) (*citing* 13 J. Moore, Moore's Federal Practice ¶ 69.03(2)); *see also Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346, 349 (1st Cir. 1997) (observing that the state remedy for enforcing money judgments is the "exclusive route"). While the standard for finding contempt is governed by federal law, the question of whether contempt is available as a remedy must be answered by looking to state law. *See Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200, 2009 WL 3416235, at *7 (S.D.N.Y. Oct. 23, 2009) (finding contempt is a stated remedy for refusal to obey a restraining notice under Article 52 of the C.P.L.R.); *Adidas Sportschufabriken v. New Generation*, No. 88

Civ. 5519, 1995 WL 646213, at *3 (S.D.N.Y. Nov. 3, 1995)(same).

New York procedure permits a finding of contempt under C.P.L.R. Article 52 only in certain circumstances. *See* Reilly, Prac. Commentaries, N.Y. C.P.L.R. § 5210, C5222:1 ("[T]here are a handful of devices that Article 52 supplies to aid enforcement of a money judgment and for which the contempt punishment has been made available as a sanction."). These circumstances, listed at C.P.L.R. Section 5251, do not include a failure to comply with a writ of execution issued under Section 5232(a).[5] New York courts have held that a writ recipient is not subject to a contempt punishment for failure to comply with a writ or levy. In place of a contempt proceeding, the petitioner's remedy under New York procedure is to bring a turnover proceeding pursuant to N.Y. C.P.L.R. Section 5225(b) or Section 5227, which may then culminate in an enforceable judgment. *See* Reilly, Prac. Commentaries, N.Y. C.P.L.R. § 5227, C5227:1.

BNP Paribas cites *Household Finance Corporation v. Rochester Community Savings Bank,* 143 Misc.2d 436, 541 N.Y.S.2d 160 (N.Y.City Ct.1989), in which the court reversed an award of costs against a bank that had failed to release funds pursuant to a levy. The court found that the "[p]etitioner's remedy for the bank's refusal to obey the levy is to bring a special proceeding pursuant to C.P.L.R. 5227." *Household Fin. Corp.,* 143 Misc.2d at 438, 541 N.Y.S.2d 160. It further noted the limited number of situations in which a contempt sanction is available: "Failure to make payment of delivery as directed by C.P.L.R. 5232(a) cannot be punished as

contempt of court because it does not constitute disobedience of a subpoena, restraining notice or court order." *Household Fin. Corp.,* 143 Misc.2d at 438, 541 N.Y.S.2d 160. Hausler argues that the cited case is distinguishable because the bank did not deny the existence of the account which the petitioner sought to garnish, as Hausler argues BNPP did in its responses to the Writs. Regardless of whether the bank acknowledged the account, however, the petitioner was required to secure a court order in addition to levying the execution. *See* Siegel, N.Y. Prac. § 496 (A garnishee who does not preserve levied property "is not subject to a contempt punishment."). More recent federal decisions support the holding in *Household Finance Corp.* that Article 52 limits contempt remedies to certain enforcement devices. *See Cruz v. TD Bank, N.A.,* 855 F.Supp.2d 157, 172 (S.D.N.Y. 2012) (finding a private right of action against a bank for money damages inconsistent with Article 52's limited remedies).

Hausler seeks to cast her contempt petition as a sanction not for BNPP's failure to turn over the funds, but for BNPP's "intentionally misleading responses" to the Writs. (Dkt. No. 21 at 12.) This distinction is not recognized in Article 52. Article 52 proscribes contempt as a remedy for failure to respond to a levy because Section 5225(b) outlines the "special proceeding" under which a judgment creditor may seek turnover of funds from a third party holding property of a judgment debtor. That special proceeding ensures that the garnishee, judgment debtor, and any other interested parties are given notice and an opportunity to respond prior to judgment.

---

5. N.Y. C.P.L.R. Section 5251 states:

Refusal or willful neglect of any person to obey a subpoena or restraining notice issued, or order granted, pursuant to this title; false swearing upon an examination

or in answering written questions; and willful defacing or removal of a posted notice of sale before the time fixed for the sale, shall each be punishable as a contempt of court.

Hausler argues that she could not readily have brought a turnover petition upon receiving the responses to the Writ, since BNPP's response identified no assets for turnover. If Hausler needed further information about blocked funds held at BNPP New York, though, she could have sought a subpoena—a device which would have provided a basis for contempt under C.P.L.R. Section 5251 had it gone unanswered. *See* N.Y. C.P.L.R. § 5224 (authorizing information subpoena where a judgment creditor "has a reasonable belief that the party receiving the subpoena has in their possession information about the debtor that will assist the creditor in collecting his or her judgment"); N.Y. C.P.L.R. § 5251.

The Court is persuaded that under New York law governing execution of money judgments, no cause of action for contempt lies for failure to comply with a writ of execution absent a court order pursuant to a turnover proceeding. A turnover proceeding was required to render a judgment and put BNPP on notice of potential contempt sanctions. Because Hausler did not obtain such a court order at any point in the five years since the issuance of the Writs, no finding of contempt based on the levy alone is warranted.

### C. *BNP PARIBAS'S REPLY TO THE LEVIES*

■ Hausler's failure to enforce the Writs by way of a turnover proceeding bars a contempt remedy under New York law. Notwithstanding that conclusion, Hausler argues that the Court may still sanction BNPP under its inherent contempt powers, which reach "beyond the court's confines". *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123. "Because of their potency" the Court's inherent contempt powers "must be exercised with restraint and discretion." *Id.*; *see also Roadway Exp.,*

*Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). For the Court to sanction BNP Paribas for its responses to the Writs, Hausler must show by clear and convincing evidence that BNP Paribas's responses to the Writs constituted contempt. *See Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 646 F.2d 800, 808 (2d Cir.1981). Moreover, that contempt must be egregious enough to warrant exercise of the Court's contempt power in the absence of state legislation permitting sanctions. *See, e.g., Masters v. Wilhelmina Model Agency, Inc.,* No. 02 Civ. 4911, 2003 WL 145556, at *8 (S.D.N.Y. Jan. 17, 2003) ("Where the legislature has made express provision for civil remedy ... the courts should not ordinarily attempt to fashion a different remedy with broader coverage.").

■ The Court is not persuaded that the responses by BNPP's in-house counsel to the levies were so unambiguously misleading as to constitute contempt. As Hausler observes, the letters in response to the Writs do not offer additional information regarding blocked Cuban funds or transactions under DOJ investigation. But that is not the letters' purpose—they are not court-ordered responses to an information subpoena or other discovery device. The letters, however cursory, do not misstate BNPP's obligations under federal law: the statement in the letter's first sentence that "BNP Paribas would not be able to remit to the U.S. Marshals any funds that it may be holding, if any, that are covered by the Writ of Execution" is correct, as Hausler would need to enforce the Writs by way of a turnover proceeding. *See* N.Y. C.P.L.R. §§ 5227 and 5225(b). The first sentence of the letter—"As you may be aware, U.S. federal regulations prohibit financial institutions such as BNP Paribas from engaging in transactions involving Cuban funds"—is somewhat disin-

genuous in light of the facts revealed in the June 2014 Agreement. However, this statement alone does not demonstrate "noncompliance," *King,* 65 F.3d at 1058, and is not a basis on which the Court will find the responses to the Writs contemptuous.

By petitioning for a finding of contempt and a sanctions award against BNPP four years after the issuance of the Writs, Hausler appears to put forth a creative but legally unsupported means to satisfy her judgment. New York law establishes clear procedures under which Hausler might have executed on her judgment by garnishing blocked funds held at BNP Paribas by way of additional discovery and turnover proceeding, but has not done so. Accordingly, the Court will not exercise its inherent contempt power to issue a finding of contempt or award sanctions on the basis of BNPP's responses to the Writs.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Motion to Dismiss filed by Respondent BNP Paribas, S.A. ("Motion", Dkt. No. 12) is GRANTED? and it is further

**ORDERED** that the "Petition for Finding of Contempt Including an Award of Sanctions Against BNP Paribas S.A." ("Petition", Dkt. No. 1) is **DENIED.**

**SO ORDERED.**