Kathy DREW–KING, Acting Regional Director of Region 29 of the National Labor Relations Board, FOR AND ON BEHALF OF the NATIONAL LABOR RELATIONS BOARD Petitioner,

v.

DEEP DISTRIBUTORS OF GREATER NY, INC., d/b/a The Imperial Sales, Inc. Respondent.

16–cv–1916 (SJF)(AKT)

United States District Court, E.D. New York.

Signed August 15, 2017

Emily A. Cabrera, Henry J. Powell, National Labor Relations Board, Brooklyn, NY, for Petitioner.

Saul D. Zabell, Zabell & Associates, P.C., Bohemia, NY, for Respondent.

## OPINION AND ORDER

FEUERSTEIN, District Judge:

Petitioner Kathy Drew–King, acting Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board ("Petitioner" or "NLRB"), commenced this action against Respondent Deep Distributors of Greater NY, Inc. d/b/a The Imperial Sales, Inc. ("Respondent" or "Deep Distributors"), seeking, *inter alia*, temporary injunctive relief pursuant to Section 10(j) of the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. § 160(j) *et seq. See* Docket Entry ("DE") [1]. Presently before the Court is the NLRB motion to hold Respondent in civil contempt for failure to comply with this Court July 5, 2016 Memorandum and Order granting Petitioner petition for injunctive relief, which Respondent opposes. DE [41], [43]. For the reasons set forth herein, Petitioner motion is denied.

## I. BACKGROUND

### A. Relevant Facts

This action arises out of Deep Distributors' alleged violations of Sections 8(a)(1) and (3) of the NLRA.[1] *See generally* Petition for Temporary Injunction Under Section 10(j) of the National Labor Relations Act ("Pet."), DE [1–1]. According to Peti-

---

1. The complete factual background is not presently at issue and is not discussed in its entirety herein.

tioner, on or about July 21, 2015, Respondent terminated Henry Hernandez, Marvin Hernandez, Roberto Reyes, Javier Reyes, and Augustin Sabillon (collectively, the "Discharged Employees"), for engaging "in concerted activities with other employees for the purposes of mutual aid and protection by filing a lawsuit alleging that Respondent was violating the Fair Labor Standards Act." *Id.* at ¶¶ 10, 12(b). On April 19, 2016, Petitioner commenced this action seeking an Order: (i) enjoining Respondent from engaging in certain conduct in violation of the NLRA, including, *inter alia*, discharging, threatening to discharge, or otherwise intimidating employees because of their Union activities; and (ii) directing Respondent to take certain ameliorative actions, including reinstating the Discharged Employees to their former positions of employment. *Id.* at §§ VI–VII. Respondent opposed the Petition, arguing, *inter alia*, that Petitioner failed to establish a basis for its proposed injunction. *See* DE [15] at 9. Respondent further argued that, before ordering Deep Distributors to reinstate the Discharged Employees, the Court should hold a "hearing to determine if the discharged employees ... are eligible for employment within the United States ...." *Id.* at 2.

In a July 5, 2016 Memorandum and Order (the "Injunctive Order"), the Court granted the NLRB petition for a temporary injunction, holding that there was "reasonable cause to believe Respondent engaged in unfair labor practices in violation of Sections 8(a)(1) and (3) of the Act, and that injunctive relief [was] just and proper." Injunctive Order, DE [21], at 17. Relevant here, the Court held that "interim reinstatement [of the Discharged Employees] is just and proper to restore the status quo." *Id.* at 16. Therefore, the Court ordered, *inter alia*, that within seven (7) days of the Injunctive Order, Respondent offer the Discharged Employees "immedi-

ate, interim reinstatement to their former jobs, or, if those jobs no longer exist, to substantially equivalent positions, without prejudice to their seniority or any other rights or privileges previously enjoyed." *Id.* at 17–18. The Court denied Respondent request for a hearing to determine whether the Discharged Employees were eligible for employment in the United States, observing that, "[p]resumably, Respondent complied with the [Immigration Reform and Control Act of 1986] when it hired the workers," and that "[a]bsent some proof, Respondent cannot now claim that those same workers are not authorized to work in the United States." *Id.* at 16. The Court further ordered that, within twenty-one (21) days of the Injunctive Order, Respondent file with the Court and serve upon Petitioner "a sworn affidavit from a responsible official of Respondent that describes with specificity how Respondent complied with the terms of [the Injunctive Order] ...." *Id.* at 18.

## B. Compliance with the Injunctive Order

On July 11, 2016, Respondent sent a letter to Jordan El–Hag, Esq., the Discharged Employees' attorney in "an unrelated Fair Labor Standards Act suit," offering the Discharged Employees "immediate, interim reinstatement to their former jobs," and requesting that El–Hag "advise [his] clients that if they [were] interested in reinstatement they [were] to appear ready, willing and able to work on July 15, 2016 at 12:00 p.m." DE [23]. According to Respondent, as of July 15, 2016, "none of the aforementioned individuals [had] returned to their positions." *Id.* In a July 19, 2016 letter to the Court, Petitioner wrote that "Respondent has failed to comply with [the Injunctive Order] by failing to make valid offers of reinstatement to the employ-

ees." DE [25]. Specifically, Petitioner claimed that: (i) "Respondent counsel deceptively emailed a purported offer of reinstatement to ... an attorney involved in an unrelated Fair Labor Standards Act lawsuit"; and (ii) Respondent "purported offer of reinstatement itself was improper because it did not give the named individuals the required reasonable period of time within which to consider the offer and make the necessary arrangements to resume employment with Respondent." *Id.* At a July 26, 2016 hearing, the Court ordered Respondent to mail valid offers of reinstatement directly to the Discharged Employees by the close of business on August 2, 2016. DE [31], [32].

On July 29, 2016, Respondent sent letters directly to the Discharged Employees, offering "immediate, interim reinstatement to [their] former position[s]," and instructing the Discharged Employees "to appear ready, willing and able to work on August 19, 2016 at 11:00 a.m." DE [41] at Ex. F. Although the parties do not dispute that Roberto Reyes and Augustin Sabillon (together, the Returning Employees") reported to work on the morning of August 19, 2016, they dispute what transpired upon their arrival. According to Petitioner, upon reporting for work, Deep Distributors' General Manager, Tony Bindra, asked Reyes and Sabillon if they were ready to work, read to them from a document in a folder, and gave them three (3) documents: (i) an employment application; (ii) an immigration form; and (iii) a "third document which the employees believed involved company rules." *See* Memorandum of Points and Authorities in Support of Petition for Adjudication and Order in Civil Contempt and for Other Civil Relief ("Pet. Mem."), DE [41–1], at 12. Respondent denies giving the Returning Employees a job application, and claims instead that they "were provided with an 'Employ-

ee Information' form and Wage Theft Prevention Act materials." *See* Respondent Memorandum of Law Submitted in Opposition to Petitioner Motion for Civil Contempt ("Resp. Opp'n"), DE [43], at 4. According to Respondent, the documentation provided "sought to confirm rates of pay, the employee name, address, telephone number, emergency contact information and reminded the employee that it was their responsibility to update the form." *Id.* at 4–5. Bindra told the Returning Employees to fill out the documents he had given them and to return them before 5:00 p.m. that afternoon. Pet. Mem. at 12.

As the Returning Employees went to their cars, Bindra stopped them and told them to come back inside. *Id.* Bindra stated that he had to re-read the document from the folder and asked them to return the documents he had given them. *Id.* Bindra asked Reyes and Sabillon if they were ready to work, read them the document in the folder in Spanish, and gave back only the employment application, stating that they would receive the other two (2) documents upon completing and returning the application. *Id.* Petitioner further claims that Bindra "also told Sabillon and Reyes that they had to submit to Respondent identification so Bindra could verify their immigration status." *Id.* Respondent denies that Bindra sought to verify the Returning Employees' immigration status, arguing "[a]t no time were the employees asked questions about their eligibility to work in the United States." Resp. Opp'n at 5. The Returning Employees then took the documents to their cars and left. Pet. Mem. at 12.

### C. The Instant Motion

On September 26, 2016, the NLRB filed the instant motion to hold Respondent in civil contempt, arguing that Deep Distributors "has engaged in willfully contuma-

cious conduct aimed at avoiding compliance with" the Court Injunctive Order. *Id.* at 5. Specifically, Petitioner argues that Respondent "failed to comply with the most critical portion of the Injunctive Order which required Respondent to reinstate the unlawfully discharged employees." *Id.* According to Petitioner, Deep Distributors imposed "unlawful conditions on the reinstatement of Sabillon and Reyes," including: (i) requiring that they complete new employee job applications; (ii) requiring that they provide identification before returning to work; and (iii) informing them that they would be required to undergo re-verification of their immigration status before returning to work. Pet. ¶¶ 20, 21. In opposition, Respondent argues, *inter alia*, that it "has, in every respect, complied with [the Court] July 5, 2016 Injunctive Order." *See* Resp. Opp'n. at 1. According to Respondent: (i) its offer of reinstatement to the Discharged Employees was unconditional; (ii) it did not require that the Discharged Employees undergo re-verification of their immigration status before returning to work; and (iii) even if it did require that the Discharged Employees undergo re-verification of their immigration status, it was permitted to do so. *Id.* at 7–17.

### D.  NLRB Administrative Decision and Order

On June 20, 2017, while the instant motion was pending, the NLRB issued its final Administrative Decision and Order (the "Final Order") in NLRB Case Nos. 29–CA–147909, 29–CA–157108, and 29–RC–146077, finding that Respondent "engaged in numerous violations of 8(a)(1) and (3) of the Act by, among other things, unlawfully terminating eight workers because of their Union and other protected activities." DE [57] at 2. Therefore, "[u]nder the [NLRA], the Court injunctive order terminated by operation of law on June 20, 2017." *Id.* According to Petitioner, "[t]he recent expiration of the injunctive order renders moot the coercive aspects of the pending contempt petition, including the proposed purgation order." *Id.* Nevertheless, Petitioner claims that, "the expiration of the injunction does not divest the Court of jurisdiction over contempt proceedings seeking compensatory relief for damages based on Respondent noncompliance with the injunction while the injunction was validly in effect." *Id.* Therefore, Petitioner argues that it is still entitled to "the relief intended to compensate for damages caused by Respondent contempt, such as back pay incurred by Augustin Sabillon and Roberto Reyes and costs and expenditures incurred by the NLRB . . . ." *Id.* at 3.

## II.  DISCUSSION

### A.  Civil Contempt Standard

Federal courts "maintain the inherent power to enforce their orders by civil contempt." *Hausler v. BNP Paribas S.A.*, 169 F.Supp.3d 531, 534 (S.D.N.Y. 2016); *see also New York State Nat'l Org. for Women v. Terry*, 697 F.Supp. 1324, 1329 (S.D.N.Y. 1988) ("An individual who refuses obedience to a valid order is subject to both civil and criminal contempt penalties for the same acts."). The Second Circuit has recognized that "a contempt order is a potent weapon that is inappropriate if there is a fair ground of doubt as to the wrongfulness of the defendant conduct." *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009) (internal quotation and citation omitted). A party may be held in civil contempt for failure to comply with a court order if: "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the

contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004); *see also Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) (discussing the civil contempt standard). The party seeking contempt "must prove respondent noncompliance with the court order by 'clear and convincing' evidence." *Nat'l Lab. Relations Bd. v. Colonial Metal Spinning & Stamping Co., Inc.*, No. 94-CV-345, 1994 WL 762409, at *2 (E.D.N.Y. July 7, 1994); *see also Nat'l Lab. Relations Bd. v. Vanguard Oil & Serv., Inc.*, No. 77-4222, 1980 WL 18736, at *12 (2d Cir. Sept. 2, 1980) ("[C]lear and convincing evidence has been defined to be more than a mere preponderance."). Where a contempt sanction is coercive in nature, "the court has broad discretion to design a remedy that will bring about compliance." *Indep. Living Aids, Inc. v. Maxi–Aids, Inc.*, 349 F.Supp.2d 509, 517 (E.D.N.Y. 2004).

As discussed above, Petitioner no longer seeks coercive relief in the instant motion. DE [57]. Rather, the NLRB argues that it is entitled to compensatory relief because Respondent violated the Injunctive Order by failing to make unconditional offers of reinstatement to the Discharged Employees. Pet. Mem. at 5–7.

## B. Unconditional Offer of Reinstatement

■ For an offer of reinstatement to be unconditional, it must place the discharged employee in the same position in which he or she would have been had there been no unlawful discrimination. *Craw & Son*, 244 N.L.R.B. 241, 242 (1979), *enforced sub. nom., Nat'l Lab. Relations Bd. v. Craw*, 622 F.2d 579 (3d Cir. 1980); *see also Kenston Trucking Co., Inc. v. Nat'l Lab. Relations Bd.*, 544 F.2d 1165, 1166–67

(2d Cir. 1976) (observing that an offer of reinstatement must be unconditional). Therefore, it is well established that an employer may not condition reinstatement by insisting that employees meet additional requirements such as submitting to employment interviews or completing job applications. *See Polynesian Cultural Ctr., Inc. v. Nat'l Lab. Relations Bd.*, 582 F.2d 467, 475 (9th Cir. 1978) (holding that an invitation "to come in and reapply for employment" was "not an unconditional offer of reinstatement"); *Domsey Trading Corp.*, 310 N.L.R.B. 777, 794 (1993) ("The general rule is that an employer, absent a legitimate business reason, may not condition the reinstatement of any employee on the filing of an application as a new employee."). Nevertheless, an employer may require that an employee complete a job application upon reinstatement where it serves a legitimate and substantial business purpose. *See Performance Friction Corp.*, 335 N.L.R.B. 1117, 1124 n.35 (2001) ("Requiring employees to complete job applications is invalid, unless an employer can show a legitimate business reason."); *Sunol Valley Golf Club*, 310 N.L.R.B. 357, 374 (1993) (holding that an offer of reinstatement was conditional when it required that the employees "reapply for their jobs and submit to interviews" without "legitimate and substantial business justification"). An employer that is ordered to offer reinstatement to a discharged employee "fails to satisfy its reinstatement obligation" where it makes an offer of reinstatement that is "ultimately found to be inadequate." *Nat'l Lab. Relations Bd. v. Cowell Portland Cement Co.*, 148 F.2d 237, 245 (9th Cir. 1945) (holding that an offer of reinstatement was inadequate where the employee was required to change union affiliations).

■ The Court declines to hold Respondent in civil contempt, as the parties' dif-

fering accounts of what occurred when the Returning Employees reported to work on August 19, 2016 provide "a fair ground of doubt as to the wrongfulness" of Deep Distributors' conduct. *Latino Officers Ass'n City of New York, Inc.*, 558 F.3d at 164. Whereas both Reyes and Sabillon submitted affidavits stating that they received applications for employment when they reported to Deep Distributors on August 19, 2016, Deep Distributors' President, Danny Bindra, affirmed that "[a]ny suggestion that [anyone] distributed an employment application of any kind ... to the employees is false." *See* Affidavit of Danny Bindra Submitted in Opposition to Motion for Civil Contempt ("D. Bindra Aff."), DE [44–13], ¶ 13; *see also* Petition for Adjudication and Order in Civil Contempt and for Other Civil Relief ("Pet. Mot."), DE [41], at Exs. L, M. Although Petitioner submitted an application for employment that Respondent allegedly gave to the Returning Employees, it is a generic application available for purchase, and contains no reference to Deep Distributors. *See* Pet. Mot. Ex. K. To the contrary, Danny Bindra affirmed that "the employment application contained in Petitioner Exhibit K is not a document that Respondent uses in its hiring practices." D. Bindra Aff. ¶ 12. Furthermore, whereas Petitioner claims that Tony Bindra told Sabillon and Reyes that they had to submit to Respondent identification so Bindra could verify their immigration status," Pet. Mem. at 12, Danny Bindra affirmed that no one "advise[d] either Messrs. Sabillon and Reyes that they would be in any way required to submit an application, immigration form, or any other document as a precondition of their unqualified reinstatement to their former positions ...." D. Bindra Aff. ¶ 14. As it is not clear that Respondent violated this Court July 5, 2016 Injunctive Order, Petitioner has failed to satisfy its burden.

Therefore, Petitioner motion to hold Respondent in civil contempt is denied.

## III. CONCLUSION

For the reasons set forth herein, Petitioner motion to hold Respondent in civil contempt, DE [41], is denied. Petitioner Motion for Expedited Decision on Petition for Adjudication and Order in Civil Contempt, DE [48], is terminated as moot.

**SO ORDERED.**