20-602-cv
Next Investments, LLC v. Bank of China

# United States Court of Appeals
## for the Second Circuit

August Term, 2020

(Argued: May 10, 2021          Decided: Aug 30, 2021)

Docket No. 20-602-cv

————————————————————————

NEXT INVESTMENTS, LLC,

*Interested Party–Appellant*,

v.

BANK OF CHINA, AGRICULTURAL BANK OF CHINA,
BANK OF COMMUNICATIONS, CHINA CONSTRUCTION BANK,
CHINA MERCHANTS BANK, INDUSTRIAL AND COMMERCIAL
BANK OF CHINA LIMITED,

*Appellees.*[*]

————————————————————————

Before:

NEWMAN, PARK, AND MENASHI, *Circuit Judges*.

In 2013, Nike, Inc., and its subsidiary, Converse, Inc. (together, "Nike"), brought a trademark-infringement suit under the Lanham Act against hundreds of participants in Chinese counterfeiting networks ("Defendants"). The United States District Court for the Southern District of New York (Scheindlin, *J.*, and McMahon, then-*C.J.*) entered five prejudgment orders, a default judgment, and one postjudgment order against Defendants, who never appeared in court. Each of those orders enjoined Defendants "and all persons acting in concert or in

---

[*] The Clerk of Court is respectfully directed to amend the caption of this matter accordingly.

participation with any of them . . . from transferring, withdrawing or disposing of any money or other assets into or out of [Defendants' accounts] regardless of whether such money or assets are held in the U.S. or abroad." In 2019, Nike's successor-in-interest, Appellant Next Investments, LLC ("Next"), moved to hold Appellees—six nonparty Chinese banks (the "Banks")—in contempt for failure to implement the asset restraints and for failure to produce certain documents sought in discovery. The district court denied the motion, and Next appealed.

We hold that the district court did not abuse its discretion in denying Next's motion for contempt sanctions against the Banks because (1) until the contempt motion, Nike and Next never sought to enforce the asset restraints against the Banks; (2) there is a fair ground of doubt as to whether, in light of New York's separate entity rule and principles of international comity, the orders could reach assets held at foreign bank branches; (3) there is a fair ground of doubt as to whether the Banks' activities amounted to "active concert or participation" in Defendants' violation of the asset restraints that could be enjoined under Federal Rule of Civil Procedure 65(d); and (4) Next failed to provide clear and convincing proof of a discovery violation. We thus **AFFIRM**.

ROBERT L. WEIGEL (Howard S. Hogan, Matthew S. Rozen, Lauren M. L. Nagin *on the brief*), Gibson, Dunn & Crutcher LLP, New York, NY & Washington, DC, *for Interested Party–Appellant*.

SANFORD I. WEISBURST, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY (David G. Hille, Jacqueline I. Chung, White & Case LLP, New York, NY; Carey R. Ramos, Cory D. Struble, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, *on the brief*) *for Appellees Bank of China, Bank of Communications, China Construction Bank, China Merchants Bank, and Industrial and Commercial Bank of China Limited*.

ADAM S. HOFFINGER, Greenberg Traurig, LLP, Washington, DC (Gary Stein, Robert E. Griffin, Thomas L. Mott, Hannah M. Thibideau, Schulte Roth & Zabel LLP, New York, NY, *on the brief*) *for Appellee Agricultural Bank of China.*

Matthew J. Oppenheim, Oppenheim + Zebrak, LLP, Washington, DC, *for Amicus Curiae Association of American Publishers, Inc. in support of Appellant*.

Lauren Beth Emerson, Robert M. Isackson, Cameron Rueber, Peter S. Sloane, Leason Ellis LLP, White Plains, NY, *for Amici Curiae Center for Anti-Counterfeiting and Product Protection and American Apparel & Footwear Association in support of Appellant*.

Joshua A. Goldberg, Patterson Belknap Webb & Tyler LLP, New York, NY, *for Amicus Curiae Banking Law Committee of the New York City Bar Association in support of Appellees*.

Roberto J. Gonzalez, Brad S. Karp, H. Christopher Boehning, Jessica S. Carey, Ethan C. Stern, Xinshu Sui, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC & New York, NY, *for Amici Curiae Institute of International Bankers and European Banking Federation in support of Appellees*.

Park, *Circuit Judge*:

In 2013, Nike, Inc., and its subsidiary, Converse, Inc. (together, "Nike"), brought a trademark-infringement suit under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, against hundreds of participants in Chinese counterfeiting networks ("Defendants"). The United States District Court for the Southern District of New York (Scheindlin, *J.*, and McMahon, then-*C.J.*) entered five prejudgment orders, a default judgment, and one postjudgment order against Defendants, who never appeared in court. Each of those orders enjoined Defendants "and all persons acting in concert or in participation with any of them . . . from transferring, withdrawing or disposing of any money or other assets into or out of [Defendants' accounts] regardless of whether such money or assets are held in the U.S. or abroad." App'x at 229, 648; *see id.* at 281, 318, 377–78, 501, 526–27. In 2019, Nike's successor-in-interest, Next Investments, LLC ("Next"), moved to hold Appellees— six nonparty Chinese banks (the "Banks")—in contempt for failure to implement the asset restraints and for failure to produce certain documents sought in discovery. The district court denied the motion, and Next appealed.

We hold that the district court did not abuse its discretion in denying Next's motion for contempt sanctions against the Banks because (1) until the contempt

4

motion, Nike and Next never sought to enforce the asset restraints against the Banks; (2) there is a fair ground of doubt as to whether, in light of New York's separate entity rule and principles of international comity, the orders could reach assets held at foreign bank branches; (3) there is a fair ground of doubt as to whether the Banks' activities amounted to "active concert or participation" in Defendants' violation of the asset restraints that could be enjoined under Federal Rule of Civil Procedure 65(d); and (4) Next failed to provide clear and convincing proof of a discovery violation. For these reasons, we affirm.

# I. BACKGROUND

A.    <u>The Asset Restraints</u>

In November 2013, Nike, Inc. and its subsidiary Converse, Inc. sued the proprietors [1] of websites advertising and selling products bearing Nike or Converse marks, like Nike's "Swoosh," its Jordan brand "Jumpman," or the Converse Chuck Taylor "All Star" label. Nike alleged trademark infringement, trademark counterfeiting, and false designation of origin, all in violation of the

---

[1] Nike's original complaint identified about three-dozen Defendants. Over the course of the district court proceedings, Nike identified hundreds of additional alleged members of the 26 counterfeiting networks alleged in the original complaint and successfully added them to the action, first as Defendants named in an amended complaint and eventually as Defendants subject to the judgment below. At the time of this appeal, the judgment applied to 636 Defendants.

Lanham Act, 15 U.S.C. §§ 1114(1), 1116(d), 1117(b)–(c), 1125(a), along with several related federal and state causes of action. Nike sought an injunction restraining Defendants from further use of the trademarks, an accounting of Defendants' profits (plus treble recovery) or treble compensatory damages for counterfeiting, statutory damages related to cyberpiracy, and punitive damages.

Nike immediately sought and received a temporary restraining order. After Defendants failed to appear, the district court granted a preliminary injunction and three orders amending the preliminary injunction. All five prejudgment orders contained the following restriction regarding Defendants' assets:

> IT IS FURTHER ORDERED that, in accordance with Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them, *including any third parties receiving actual notice of this Order* by personal service or otherwise, are restrained and enjoined from transferring, withdrawing or disposing of any money or other assets of Defendants, or otherwise paying or transferring any money or other assets into or out of any accounts held by, associated with, or utilized by Defendants, *regardless of whether such money or assets are held in the U.S. or abroad*.

App'x at 281 (emphasis added); *see id.* at 318, 377–78, 501; *see also id.* at 229 (TRO).[2]

---

[2] The TRO did not contain the residual clause prohibiting "otherwise paying or transferring money or other assets into or out of" Defendants' accounts. App'x at 229.

B.    The Banks Attempt To Challenge the Asset Restraints

In June 2015, Nike moved for default judgment. Nike's proposed judgment would have preserved the asset restraints from the prejudgment orders and extended them to any later-discovered assets belonging to Defendants. About one month later, the Banks—six nonparty banks headquartered in China[3]—filed a joint letter opposing Nike's motion for default judgment "insofar as the proposed judgment contains a federal asset-freezing injunction that would purport to require the Banks to restrain customer accounts located outside the United States." App'x at 1096. Nike had notified the Banks of the prejudgment orders by personally serving the orders and related material at the Banks' New York branch offices or by approved email service. The Banks' letter argued that the court could not enforce the asset restraints against the Banks in light of international comity concerns and New York's separate entity rule and because the court lacked personal jurisdiction over the Banks.

Nike responded that the Banks' objections were irrelevant and premature because the proposed judgment "is not an order against the Banks." *Id.* at 1102.

---

[3] The Bank of China ("BOC"), Agricultural Bank of China ("ABC"), Bank of Communications ("BOCOM"), Industrial and Commercial Bank of China ("ICBC"), China Construction Bank ("CCB"), and China Merchants Bank ("CMB").

7

"If the Court later needs to compel the Banks to take (or refrain from) any specific actions to prevent the counterfeiters from violating the default judgment, the Court can then evaluate whether personal jurisdiction exists over the Banks and whether any comity issues exist for the Court to consider." *Id.* The district court agreed with Nike and denied the Banks' letter motion, reasoning that the Banks' objections were not "ripe" because "the Proposed Default Judgment is directed entirely at defendants and seeks no enforcement against the non-party Banks." *Nike, Inc. v. Wu*, No. 13-cv-8012, 2015 WL 9450795, at *1 (S.D.N.Y. Aug. 20, 2015) ("*Nike I*"). The district court acknowledged the possibility—however remote— "that defendants will comply with the Court's Order and make plaintiffs whole— in which case the Banks would never be required to take any action with respect to the asset freeze." *Id.*

The district court entered default judgment against Defendants on August 20, 2015 and granted Nike an accounting of profits. Without any documents from Defendants to assist in calculating their profits, the court used statutory proxies,

yielding a judgment of over $1 billion.[4] The judgment also kept the prejudgment asset restraints in place, ordering that

> in accordance with Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 11l6(a), Article 52 of New York State's Civil Practice Law and Rules, and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, all Defendants' Assets that have been previously identified as frozen or that were otherwise required to be restrained in compliance with this Court's Orders, continue to be restrained regardless of whether the Defendants' Assets are located in the United States or abroad.

App'x at 526–27. The default judgment went on to apply the same restraints to "any other of Defendants' Assets that Plaintiffs identify in the future and/or that have not yet been frozen . . . regardless of whether the Defendants' Assets are located in the United States or abroad." *Id.* at 527.

On January 31, 2017, nearly a year-and-a-half later, Nike assigned its interest in the judgment to Next Investments, LLC, an investment vehicle owned by the litigation-finance firm Tenor Capital. Next (represented by Nike's counsel) sought an order to show cause why (1) Defendants should not be held in contempt of court and (2) additional bank accounts and websites associated with the counterfeiter networks should not be subject to the judgment. The district court

---

[4] The Lanham Act authorizes damages of not more than $2,000,000 for each willful use of a counterfeit mark, 15 U.S.C. § 1117(c)(2), and not more than $100,000 for each infringing domain name, *id.* § 1117(d).

9

(reassigned to then-Chief Judge Colleen McMahon after Judge Scheindlin retired) entered the order. Defendants again failed to appear, so the court held them in contempt for failing to comply—or even to make reasonable efforts to comply—with the default judgment. That contempt order, which the parties call the "Final Order," incorporated the additional bank accounts, and as before, it prohibited "all persons acting in concert or in participation with" Defendants from moving assets in the accounts "regardless of whether such money or assets are held in the U.S. or abroad." App'x at 648. But this time the court explicitly ordered, "by automatic operation of Fed. R. Civ. P. 65(d)(2), that all third parties who act in concert or participation with [Defendants] . . . and who receive actual notice of this order . . . shall be bound by the terms of this order," including the asset restraints. App'x at 653. The Final Order also gave Next the right to seek expedited discovery, from any financial institution servicing Defendants, of "all documents and records . . . whether located in the U.S. or abroad, relating to any financial accounts" associated with any Defendant. *Id.* at 649–50.

Next served the Banks with the Final Order and subpoenas for expedited discovery. The cover letter to each Bank explained that the Bank was bound by the asset restraints, which applied both within the United States and abroad.

10

All of the Banks complied with the subpoenas on behalf of their sole New York branches and stated that none of Defendants' accounts was held in New York. But the Banks argued that, for the same reasons they objected to the default judgment, neither the subpoenas nor the asset restraints could reach accounts held at Bank branches outside of New York. The Banks moved to quash the subpoenas insofar as they sought discovery beyond the New York branches and to modify the Final Order to limit the asset restraints to New York accounts. Next cross-moved to compel production and opposed modification.

The district court granted Next's cross-motion to compel production, with certain modifications to accommodate China's banking laws. *See Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 318 (S.D.N.Y. 2018) ("*Nike II*") (Freeman, *M.J.*), *aff'd*, *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) ("*Nike III*") (McMahon, then-*C.J.*); Memo Endorsement of Bank Letter at 1, *Nike, Inc. v. Wu*, No. 13-cv-8012 (S.D.N.Y. Dec. 12, 2018), ECF No. 181 (permitting delivery of documents through China's Ministry of Justice). Although the court lacked general personal jurisdiction over the Banks, it found that it had specific personal jurisdiction sufficient to compel production abroad based on the Banks' maintenance of correspondent and settlement accounts in New York, some of which had been used to facilitate

11

transfers for Defendants. *See Nike II*, 349 F. Supp. 3d at 322–27, 331–32; *Nike III*, 349 F. Supp. 3d at 354–60. The court concluded that the totality of the comity factors weighed in favor of compelling compliance with Next's discovery requests. *See Nike II*, 349 F. Supp. 3d at 334–41; *Nike III*, 349 F. Supp. 3d at 363–68.

The court did not decide, however, whether the asset restraints could apply outside the United States. In response to the Banks' motion to limit the asset restraints in the Final Order to New York accounts, Next averred that the "Final Order, same as the Judgment, is directed entirely at Judgment Debtors and seeks no enforcement against the Banks." App'x at 1280. Next clarified that it did "not currently seek[] an order compelling the Banks to turn over their proceeds." *Id.* The Banks thus withdrew their motion for modification and asked that the withdrawal be without prejudice to allowing the Banks to renew the request if Next were to seek to enforce the restraints. The magistrate judge agreed and no party objected. *See Nike II*, 349 F. Supp. 3d at 345–46.

The Banks collectively produced over 7,000 documents, totaling over 20,000 pages, in the three months after the district court affirmed the magistrate judge's ruling.

12

B. The Contempt Motion Against the Banks

In response to a motion by the Banks to shift certain discovery costs (a motion denied below and not challenged on appeal), Next moved to hold the Banks in contempt on July 19, 2019.

First, Next asserted that the Banks had never instituted an asset freeze on any Defendants' accounts and were thus in contempt of the asset-restraint provisions of the prejudgment orders, the default judgment, and the Final Order. Based on documents produced by the Banks, Next counted at least 36,000 transactions in violation of the asset restraints, including withdrawals and deposits as early as November 15, 2013, the day after entry of the TRO. These allegedly violative transactions continued up through the Bank's production of documents in late 2018.

Second, Next accused the Banks of producing just a small fraction of their relevant documents and thus failing to display reasonable diligence in complying with the discovery order.

Next sought several sanctions. It first asked for $150 million as "compensatory contempt damages" resulting from the thousands of prohibited transactions. App'x at 1689. Next calculated that Defendants transferred over

13

$32 million out of their accounts *after* the Banks had been made aware of the asset restraints. Next also argued that the Banks' conduct made them participants in the counterfeiting networks and thus jointly and severally liable for at least $118 million in statutory damages. Next also sought a turnover order of the roughly $40,000 left in Defendants' accounts. And as sanctions for the alleged discovery violations, Next sought an adverse inference that the missing documents would have shown additional violative transactions, increasing the sanctions above the $150 million already specified.

This contempt motion, filed on July 19, 2019, marked the first time Nike or Next had sought to enforce the asset restraints against the Banks, squarely raising the question whether the restraints applied extraterritorially. The district court concluded that they did not. Instead, the district court found that the asset restraints had "never bound" the Banks. *Nike, Inc. v. Wu*, No. 13-cv-8012, 2020 WL 257475, at *2 (S.D.N.Y. Jan. 17, 2020) ("*Nike IV*").

The district court offered two main reasons why the asset restraints never bound the Banks. First, it concluded that New York's separate entity rule required the court to treat the Banks' foreign branches as entities separate from their New York branches for the purpose of "enforcement of postjudgment asset restraints

14

and turnover orders." *Id.* at *21. Second, the court found that Next failed to offer "proof showing that the Banks aided and abetted the Judgment Debtors' unlawful activity." *Id.* at *20. It thus rejected Next's charge that the Banks had been in "active concert or participation" with Defendants by providing "routine banking activities." *Id.* at *19. The court held that "'active concert or participation' is something more than account management in the ordinary course." *Id.*

The district court also gave other reasons for concluding that the Banks were not bound by the asset restraints. Noting that an order must be "clear and unambiguous" to be the basis for contempt, the court concluded that the various orders failed to "identify each account subject to the asset restraints" or to identify the Banks as third parties subject to the restraints. *Id.* at *17–18. Similarly, the "geographic scope" of the orders was ambiguous, *id.* at *17, and the court found the postjudgment asset restraints to be ultra vires, *see id.* at *23–24 (citing *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999)). Finally, the court stated that "the Contempt Motion clashes with fundamental notions of due process." *Id.* at *24. The court characterized the contempt motion as an "underhanded" or "gotcha" tactic in light of Nike's and Next's earlier, repeated assertions that they were not seeking enforcement against the Banks. *Id.* at *25.

15

The court thus concluded that awarding $150 million in contempt sanctions would unfairly "reward efforts by both Plaintiffs and Assignee to delay resolution of this issue and bolster their contempt arguments." *Id.*

The district court also denied Next's motion for contempt sanctions for violation of the discovery orders. It found that Next failed to show that the Banks' effort to comply with the discovery orders fell below the standard of reasonable diligence. To the contrary, the court noted that "the Banks searched numerous branches and databases for the information demanded in the subpoenas, even though some of the Debtor information was incomplete and unsearchable." *Id.* at *26. Although the court disagreed with the Banks' decision to withhold currency transaction and credit reports to avoid violating Chinese law, "those limited instances of noncompliance are slender reeds on which to rest the finding of contempt that [Next] demands." *Id.* at *27. The district court thus refused Next's request for an adverse inference.

This timely appeal followed. We have subject-matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a)–(b), and appellate jurisdiction under 28 U.S.C. § 1291. *See Latino Officers Ass'n City of N.Y., Inc. v. City of New York*, 558 F.3d 159, 163 (2d Cir. 2009) ("[W]here, as in this case, civil contempt

16

proceedings are instituted after the conclusion of the principal action rather than during the pendency of the action, the order disposing of the contempt proceedings is appealable as a final decision of a district court under 28 U.S.C. § 1291." (internal quotation marks omitted)).

## II. STANDARD OF REVIEW

"A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401, 401(3). "To demonstrate [contempt], 'a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 (2d Cir. 2014) (quoting *Perez v. Danbury Hosp.*, 347 F.3d 419, 423–24 (2d Cir. 2003)).

"It is peculiarly within the province of the district court to determine the meaning of its own order," *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995) (cleaned up), so the district court is best positioned to determine whether the "potent weapon" of contempt is the best means of enforcing that order, *Int'l*

17

*Longshoremen's Ass'n Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). We review the "ultimate ruling on the contempt motion . . . for abuse of discretion." *Latino Officers Ass'n*, 558 F.3d at 164.[5] We accept the district court's factual findings "unless they are shown to be clearly erroneous." *Id.* "We accord substantial deference to a district court's construction of its own orders," while acknowledging that "the construction cannot be based on an error of law." *United States v. Canova*, 412 F.3d 331, 346 (2d Cir. 2005). Purely legal questions are considered *de novo. See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010).

### III. DISCUSSION

A. <u>The District Court's Denial of Contempt Sanctions Was Not an Abuse of Discretion in Light of Plaintiffs' Failure to Move to Compel the Banks to Comply with the Asset Restraints</u>

The district court faulted Next for delaying resolution of key issues regarding the scope and application of the asset restraints. *See Nike IV*, 2020 WL

---

[5] Given the seriousness of the contempt remedy and the careful limitations on its use, we apply a "rigorous" or "more exacting" abuse of discretion review to district court orders holding a party in contempt. *Chevron Corp. v. Donziger*, 990 F.3d 191, 202, 212 (2d Cir. 2021) (citations omitted); *see also EEOC v. Loc. 638*, 81 F.3d 1162, 1171 (2d Cir. 1996). But such scrutiny is not appropriate here because the district court did not hold a party in contempt.

18

257475, at *25. We agree—the district court's denial of the contempt motion on this basis was an appropriate exercise of its discretion.

First, Nike and Next (together, "Plaintiffs") failed to seek enforcement of the asset restraints against the Banks for almost six years. Next's July 2019 contempt motion alleged that the Banks had violated the orders as far back as November 15, 2013, the day after the district court issued the temporary restraining order. According to Next, during the period between the TRO and the contempt motion, the Banks facilitated tens of thousands of transactions in violation of the orders, which caused $150 million in damages to Next. This delay of nearly six years is difficult to explain. Nike was sufficiently suspicious of ongoing violations that it served all six nonparty Banks with the TRO within twelve days of its issuance, and Nike and Next continued to serve the Banks with notice of each successive order. But instead of acting on their suspicions and taking any steps to compel the Banks' compliance, Plaintiffs allowed six years to pass while at least $150 million in alleged damages accumulated.

Second, Nike and Next explicitly disclaimed that they were seeking enforcement of the asset restraints against the Banks for four years, which prevented the court from addressing the Banks' objections to the orders. Not only

did Plaintiffs fail to take any action despite knowing of or suspecting that transactions were ongoing; they specifically averred that they were *not* enforcing the orders against the Banks. The Banks tried twice to present legal arguments challenging the scope of the asset restraints, once in July 2015 and again in February 2018. *See* App'x at 1096–99, 1160–89 (objecting to the default judgment and the Final Order). But Plaintiffs expressly disclaimed enforcement against the Banks, and thus forestalled any case or controversy about the scope of the orders. *See Nike I*, 2015 WL 9450795, at \*1; *Nike II*, 349 F. Supp. 3d at 345 (concluding that the Banks' legal challenges to the orders were not ripe). The damages sought in Plaintiffs' contempt motion accumulated for four years from their first disclaimer of any attempt to enforce the orders against the Banks.

Under these circumstances, it was well within the district court's discretion to consider Plaintiffs' dilatory conduct in denying Next's contempt motion. Plaintiffs' delay made a contempt motion an improper vehicle for addressing the Banks' substantial legal defenses to the orders for the first time. *See Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir. 2008) ("[I]t seems unreasonable that Gotham be required, on pain of contempt, to arrive at a correct answer to such a difficult question of first impression."); *see also Radio Corp. of Am. v. Cable Radio*

*Tube Corp.*, 66 F.2d 778, 782–83 (2d Cir. 1933) (noting potential unfairness to defendant where contempt proceedings used to resolve "substantial dispute").

As noted above, until the contempt motion, Plaintiffs' disavowals had prevented the district court from resolving questions about the applicability of its orders to the Banks. For almost six years—including four years directly attributable to Plaintiffs' disclaimer in 2015—the Banks were unable to obtain a ruling on their arguments that the asset-restraint orders did not reach them because they could not apply extraterritorially, did not encompass ordinary banking activities, or failed to identify the frozen accounts with adequate specificity. In light of these unresolved questions of law, the district court properly declined to hold the Banks in contempt. "[W]here infringement . . . is not clear on the face of the matter," it is simply not "reasonable" to put the Banks "at the peril of correctly gauging [their] right[s] under the [orders] or being liable in contempt." *Radio Corp. of Am.*, 66 F.2d at 782–83; *see also Gotham Registry*, 514 F.3d at 292.

Moreover, Plaintiffs' conduct precluded them from carrying their burden to "establish that . . . the order the contemnor failed to comply with is clear and unambiguous." *Gucci Am.*, 768 F.3d at 142. Plaintiffs made it impossible to satisfy that burden by disclaiming enforcement of the restraints. Next could have moved

21

to compel the Banks to comply with the orders on behalf of their foreign branches. *See Nike IV*, 2020 WL 257475, at \*25 ("If Assignee wishes to enforce the asset restraints against the Banks, it should brief the comity factors and give the Banks an opportunity to respond in connection with a motion to compel compliance."); *see also, e.g.*, *Gucci Am.*, 768 F.3d at 127–28 (noting that the district court granted a motion to compel compliance with the asset restraints before granting the contempt motion); *Tiffany (NJ) LLC v. China Merchs. Bank*, 589 F. App'x 550, 553–54 (2d Cir. 2014) (vacating order compelling compliance with asset freezes). Under the circumstances, Next should have proceeded with a motion to compel compliance by the Banks before seeking contempt sanctions.

We also note that the district court has "broad discretion in fashioning coercive remedies," including declining to award sanctions. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995). Contempt sanctions must be "reasonable in relation to the facts," a determination we leave "to the informed discretion of the district court." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989). Here, the district court refused to reward Next's "'gotcha' tactics" and other efforts "to delay resolution" of key legal issues. *Nike IV*, 2020 WL 257475, at \*25. The district court emphasized the gamesmanship at the foundation of Next's

22

motion: The $150 million in contempt sanctions reflects injuries that Plaintiffs allowed to accumulate while resting on their rights for six years and disclaiming enforcement for four. These dilatory tactics undermine Next's claim to such a large amount in damages. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2946 (3d ed. 2021) ("[A] plaintiff is advised to assert all rights under Rule 65 promptly. Any unnecessary delay in doing so may be viewed as inconsistent with a claim that plaintiff is suffering great injury . . . .").

In sum, the district court did not abuse its discretion by denying Nike and Next's motion for $150 million in contempt sanctions in light of Plaintiffs' years-long delay in seeking enforcement of the orders.

B.     There Is a "Fair Ground of Doubt" as to Whether the Restraints Could Bind the Banks

The district court also properly denied Next's contempt motion because Next failed to carry its burden to demonstrate that the asset restraints clearly and unambiguously forbade the Banks' conduct. As in any contempt motion, Next must establish that the orders are "clear and unambiguous" to hold the Banks in contempt. Next also must show that the orders were sufficiently clear to the Banks *at the time* of the alleged conduct that it would not be "unreasonable" to require

23

compliance in the first instance "on pain of contempt." *Gotham Registry*, 514 F.3d at 292.

"A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King*, 65 F.3d at 1058 (cleaned up). Thus, a contempt order "is inappropriate if 'there is a fair ground of doubt as to the wrongfulness of the [alleged contemnor's] conduct.'" *Latino Officers Ass'n*, 558 F.3d at 164 (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). Ambiguities in the order's language and persisting questions about legal limits on the court's power can each defeat a contempt motion. *See, e.g.*, *King*, 65 F.3d at 1059 (linguistic ambiguity); *Gotham Registry*, 514 F.3d at 292 (legal ambiguity).[6]

We hold that the district court appropriately exercised its discretion to deny Next's contempt motion because there are "fair ground[s] of doubt" as to whether those restraints apply extraterritorially in light of principles of international

---

[6] By contrast, the First Circuit has held that only linguistic ambiguity is a defense to contempt. *See Goya Food, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002) ("Thus, the 'clear and unambiguous' standard applies to the *language* of the relevant court order, not to its effectiveness." (emphasis in original)).

24

comity and New York's separate entity rule and as to whether the Banks were "in active concert or participation" with Defendants within the meaning of Rule 65(d).

### 1. *International Comity*

To avoid a conflict with Chinese law, principles of international comity might limit the asset restraints' geographic scope to domestic accounts. Comity "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). "Although courts in this country have long recognized the principles of international comity and have advocated them in order to promote cooperation and reciprocity with foreign lands, comity remains a rule of 'practice, convenience, and expediency' rather than of law." *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997) (quoting *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971)). It follows that "when a court order will infringe on sovereign interests of a foreign state," we eschew any categorical rule and instead draw on the eight-factor framework found in Section 403 of the Restatement (Third) of Foreign Relations Law. *Gucci Am.*, 768 F.3d at 139 (citing *United States v. Davis*, 767 F.2d 1025, 1036–39 (2d Cir. 1985)).

25

Here, the Banks assert that China's banking laws prohibit them from freezing customer accounts. A Chinese bank may freeze assets only at the request of a "competent organ"—a term that includes Chinese courts but excludes foreign courts. App'x at 10,345–46 (citing Provisions on the Administration of Financial Institutions' Assistance to Inquiries, Freezing or Deduction of Accounts (promulgated by People's Bank of China, Jan. 15, 2002, effective Feb. 1, 2002), CLI.10.56742(EN) (Lawinfochina)). Next disputes this reading of Chinese law and dismisses the possibility that the Banks, as "quasi-governmental entities," would actually be sanctioned for freezing Defendants' accounts. Reply Br. at 32.

There is a "fair ground of doubt" about how the comity factors would apply in this case. Section 403 calls for China and the United States to "evaluate both [of] its interests" and to yield to the state with the "clearly greater interest." Restatement (Third) of Foreign Relations § 403 cmt. e (Am. Law Inst. 1987). "It need hardly be stated that the United States itself has a powerful interest in enforcing the acts of Congress, especially those, such as the Lanham Act, that are designed to protect intellectual property rights and prevent consumer confusion." *Gucci Am. v. Li*, No. 10-cv-4974, 2011 WL 6156936, at *11 (S.D.N.Y. Aug. 23, 2011) (Sullivan, *J.*), *vacated on other grounds* 768 F.3d 122 (2d Cir. 2014). On the other

hand, factors like "the connections . . . between the regulating state and the person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect," Restatement (Third) of Foreign Relations § 403(2)(b), suggest that enforcing the asset restraints would be improper, because the Banks, the accounts, and the affected customers are located in China.

The district court never engaged in this kind of analysis with respect to the asset restraints.[7] "A comity analysis drawing upon § 403 is . . . appropriate *before* ordering a nonparty foreign bank to freeze assets abroad in apparent contravention of foreign law to which it is subject." *Gucci Am.*, 768 F.3d at 139 (emphasis added). Where, as here, the comity concerns are colorable and the district court had not decided the issue, the Banks had a reasonable basis to doubt whether the asset restraints applied to their foreign branches. The district court thus did not abuse its discretion in denying Next's contempt motion based on the Banks' failure to implement such restraints in China.

---

[7] The district court engaged in a comity analysis only with respect to the discovery requests, which implicate a set of factors distinct from section 403.

27

## 2. *Separate Entity Rule*

New York's separate entity rule, which in this context is itself a rule of comity, also provides "fair ground[s] of doubt" about whether the asset restraints apply to the Banks' Chinese branches. "The separate entity rule . . . provides that even when a bank garnishee with a New York branch is subject to personal jurisdiction, its other branches are to be treated as separate entities for certain purposes, particularly with respect to [New York Civil Practice Law and Rules] article 62 prejudgment attachments and article 52 postjudgment restraining notices and turnover orders." *See Motorola Credit Corp. v. Standard Chartered Bank*, 21 N.E.3d 223, 226 (N.Y. 2014), *answering question certified by Tire Eng'g & Distrib. L.L.C v. Bank of China Ltd.*, 740 F.3d 108 (2d Cir. 2014).

Although the separate entity rule is a principle of state law, the Federal Rules of Civil Procedure incorporate state law under certain circumstances. As relevant here, Rule 69 provides that "[t]he procedure on [writs of] execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Any conflicting "federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1).

28

In the district court's view, the postjudgment asset restraints were subject to the separate entity rule, which prevented their extraterritorial application. *See Nike IV*, 2020 WL 257475, at \*21–22 (citing *Motorola*, 21 N.E.3d at 230). We need not decide whether the separate entity rule bars enforcement of the postjudgment asset restraints. It is enough that Next fails to identify a legal principle that clearly subjects the Chinese branches to the asset restraints, whether by blocking application of the separate entity rule or by reaching the Chinese branches notwithstanding the separate entity rule.

Next makes two dubious arguments. First, it claims that the separate entity rule cannot apply where it is in conflict with Federal Rule of Civil Procedure 65(d)'s provisions binding nonparties who have actual notice. We reject this argument. Rule 69 describes its operation with more specificity than does Rule 65(d). In such circumstances, "the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012) (quoting *United States v. Chase*, 135 U.S. 255, 260 (1890)).

Second, Next asserts that the separate entity rule applies only if personal jurisdiction is based entirely on the presence of a New York branch. And here, Next argues that personal jurisdiction is based on the foreign accounts' use of New York correspondent and settlement accounts, so the separate entity rule must not apply. Again, we disagree. To start, Next points to no New York authority holding that the separate entity rule depends on the nature of the jurisdictional hook. *Cf. Global Tech., Inc. v. Royal Bank of Can.*, No. 150151/2011, 2012 WL 89823, at *13 (N.Y. Sup. Ct. 2012) (explaining that the separate entity rule should be "understood as akin to a rule governing service of process" independent of jurisdiction). Moreover, the district court did not decide whether it had specific personal jurisdiction over the Banks as to their compliance with the asset restraints, let alone over their Chinese branches. The district court's personal jurisdiction finding was expressly limited to the discovery orders. *See Nike II*, 349 F. Supp. 3d at 322, 332 & n.12. Next thus failed to meet its burden to show that the restraints applied to the foreign bank branches.

   3.   *"Active Concert or Participation" Under Rule 65(d)*

The district court also determined that the Banks were not in "active concert or participation" with Defendants and thus the asset restraints did not clearly and

30

unambiguously apply to the nonparty Banks under Rule 65(d)(2). *See Nike IV*, 2020 WL 257475, at *19–20. We agree with this conclusion.

"Rule 65(d) is designed to codify the common-law doctrine that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302–03 (2d Cir. 1999) (internal quotation marks omitted); *see also Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (L. Hand, *J.*) (stating that, in order to hold a nonparty in contempt of a court order, the nonparty "must either abet the defendant, or must be legally identified with him"). The relevant inquiry under Rule 65(d) is whether the nonparty Banks aided or abetted the Defendants' violations of the court's orders. *See NML Cap., Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013) (stating that Rule 65(d) forbids nonparties "'in active concert or participation' with an enjoined party . . . from assisting *in a violation of the injunction*" (emphasis added)).

We have never catalogued the activities that constitute aiding and abetting a defendant's violation of an asset-restraint order. Although Defendants may have violated the orders by withdrawing or transferring funds, there is a "fair ground of doubt" as to whether the facilitation of such transactions by providing routine

31

financial services could expose the Banks to liability under Rule 65(d).[8] The district court reasonably concluded that Rule 65(d) requires "clear and convincing proof" that "'an enjoined party is substantially intertwined with a non-party,'" and that such proof was lacking here. *Nike IV*, 2020 WL 257475, at *19 (quoting *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018)). The ultimate answer to this question might also depend on the common-law understanding of aiding and abetting, which would ask whether a nonparty's assistance is sufficiently "substantial" to be proscribed by the Rule. *See* Restatement (First) of Torts § 876(b) (Am. Law Inst. 1939). But such an understanding is at best uncertain and our sister circuits have not adopted it. *See, e.g., Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949–51 (9th Cir. 2014); *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1353 (Fed. Cir. 1998).

---

[8] We thus need not address the question whether the Banks' provision of "routine" banking services can constitute aiding and abetting violations of asset-restraint orders. To the extent the district court held otherwise, we reach no conclusion on that portion of its ruling.

As with the question of extraterritorial application, the "fair ground of doubt" as to whether the Banks were in "active concert or participation" with Defendants is enough to defeat Next's contempt motion.

C.    The Alleged Discovery Violations

Finally, we affirm the district court's denial of Next's motion for discovery sanctions. The standard for holding a party in contempt of discovery orders is the same as the standard for holding a party in contempt of asset restraints. *See S. New England Tel. Co.*, 624 F.3d at 144–45. Next "must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King*, 65 F.3d at 1058. Unlike the asset restraints, where the focus has been on the clarity of the orders, the district court found that Next's proof of noncompliance with the discovery orders was not "clear and convincing" because the Banks made "diligent and energetic efforts to comply in a reasonable manner." *Nike IV*, 2020 WL 257475, at *25 (quoting *Gotham Registry*, 514 F.3d at 293). These are factual findings, which Next must show were clearly erroneous in order to prevail. *See Latino Officers Ass'n*, 558 F.3d at 164.

On appeal, Next focuses on just two of the Banks: BOCOM and ABC. *See* Appellant's Br. at 56–57. Next alleges that BOCOM and ABC each withheld requested documents showing transactions associated with several merchant accounts used in the counterfeiting scheme. But Next offers no clear and convincing proof that such documents existed and were in each bank's possession. For example, BOCOM's compliance officer's statement that BOCOM "identified transaction information pertaining to" several merchants before blacklisting those merchants, App'x at 1492, in no way proves that BOCOM created records of *individual* transactions and maintained such records. Likewise, Next's assertion that Mastercard's intricate rules for intermediary merchants required ABC and BOCOM to keep such records does not prove that the records exist or ever existed. We thus affirm the district court's denial of Next's motion for discovery sanctions.

## IV. CONCLUSION

For the reasons set forth above, the district court's judgment is AFFIRMED.